IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WICKIE TUTT, | ) | |
| Petitioner, | ) | Civil Action No. 08-255 Erie |
| | ) | |
| v. | ) | District Judge Sean J. McLaughlin |
| | ) | Magistrate Judge Susan Paradise Baxter |
| PROSECUTOR'S OFFICE, et al., | ) | |
| Respondents. | ) | |
| | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.     RECOMMENDATION**

It is respectfully recommended that the Amended Petition For a Writ Of Habeas Corpus [ECF No. 22] be denied and that a certificate of appealability be denied.

**II.    REPORT**

Before the Court is Petitioner Wickie Tutt's Amended Petition For a Writ Of Habeas Corpus [ECF No. 22], which he has filed pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under this statute, habeas relief is only available on the grounds that Petitioner's judgment of sentence was obtained in violation of his rights under the United States Constitution. 28 U.S.C. § 2254(a). See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Petitioner contends that it was, and in support he raises the following three claims in the Amended Petition:

>   **Claim 1**     The prosecution failed to disclose a surveillance video, or still images from that video, which establishes his innocence, in violation of its obligations under Brady v. Maryland, 373 U.S. 83 (1963);

1

> **Claim 2** His court-appointed attorney, Elizabeth Malc Dwyer, Esq., provided him with ineffective assistance of counsel because she knew of the video/still images and failed inform him of them, thereby deliberately misleading him in order to get him to plead guilty;
>
> **Claim 3** He is actually innocent of the offense to which he pleaded guilty (Theft by Receiving Stolen Property).

[ECF No. 22].

### A. Relevant Background[1]

From July 16, 2001, through May 24, 2002, Petitioner and several co-conspirators defrauded various financial institutions, including Sky Bank and its branch locations in Girard, Pennsylvania, and Orwell City, Ohio. Petitioner admits that he created counterfeit checks on his personal computer and that his co-conspirators would cash those checks at various banks. They used several names in their scheme, including the name Edward A. Dobran. As a result of their scheme, financial institutions incurred a loss of approximately $244,993.00. (See Brief for Appellant, 92 WDA 2006 at p. 3 (Pa.Super.Ct.); see also CP Dkt. No. 13).

On July 18, 2002, Petitioner appeared before the U.S. District Court for the Northern District of Ohio at Criminal Docket Number 02-258, and pleaded guilty to bank fraud in violation of 18 U.S.C. § 1344. The district court sentenced him to 40 months' incarceration.

Next, in July 2003, the Commonwealth filed a criminal complaint against Petitioner and accused him of committing numerous crimes against the Sky Bank branch located in Girard, Pennsylvania ("Sky Bank Girard"). A warrant for his arrest was issued. Trooper Eric A. Rodgers completed the affidavit of probable cause that accompanied the warrant. In it he stated:

---

[1] Respondents have submitted the Common Pleas Court's file and transcripts, as well as the appellate briefs. The documents contained in the Common Pleas Court's file are numbered 1 through 24 and shall be cited to as "CP Dkt. No. __ ."

> On 10/18/[01] at approximately 1515 hrs. a black subject entered the Sky Bank located at 9189 West Ridge Rd. Girard, PA and presented a Holiday Club check bearing identification no. 46861. The black subject presented an Ohio driver's license identifying himself as Edward DOBRAN.... [He] signed the check in the name of Edward DOBRAN and received the money from the above mentioned clerk. The black subject then left the bank with U.S. currency in the amount of $1,983.72. As the black male subject was leaving the bank the clerk realized that the Ohio driver's number did not possess the proper characters and attempt[ed] to stop the black subject. She exited the bank and observed the subject entering a grey/silver, Honda/Nissan and fleeing the area at a high rate of speed.
>
> The bank later determined that the check submitted by the black male subject was not a proper check and would not be honored by the bank.
>
> The State Police in Girard were contacted at which time Trooper Mark BARSOTTI responded and took into custody the check presented by the black male as well as a Styrofoam cup used by the subject while he was in the bank. Both items were processed by the State Police R&I Unit at which time a thumb print was obtained from the check presented to the bank and signed by Edward DOBRAN. The thumb print was entered in to AFIS and checked with existing FBI prints at which time it was determined that the print obtained from the check was that of [Petitioner] with a last known address in Youngstown, Ohio. *Video was also obtained from the bank security cameras and entered into evidence*.

(Affidavit of Probable Cause, attached to Criminal Complaint, CP Dkt. No. 1 (emphasis added)).

Pennsylvania State Police arrested Petitioner on March 29, 2004. He was charged in the Court of Common Pleas of Erie County with Forgery, Conspiracy (Bad Checks), Identify Theft, Conspiracy (Theft by Deception) and Theft by Receiving Stolen Property. The court appointed Elizabeth Malc Dwyer, Esq., to represent him. He waived his right to a preliminary hearing and the charges of Forgery and Identify Theft were withdrawn. (See CP Dkt. Nos. 1-2)

On September 13, 2004, Petitioner appeared before the Common Pleas Court and entered a guilty plea to the crime of Theft by Receiving Stolen Property. The Commonwealth *nolle prossed* the remaining counts against him. (CP Dkt. No. 4; see also Plea Hr'g Tr. at pp. 5-16).

Keith Clelland, Esq., represented Petitioner at his sentencing hearing, which was held on November 5, 2004. On that date, the court sentenced him to a standard range sentence of 14-60 months' incarceration, to be served consecutive to his federal sentence. (See Sentencing Hr'g Tr. at p. 15).

Petitioner did not file an appeal with the Superior Court of Pennsylvania. Accordingly, his judgment of sentence became final when the 30-day time period to do so expired, see Pa.R.Crim.P. 720, which was December 5, 2004. Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000) (a judgment of sentence becomes final at the conclusion of direct review or the expiration of time for seeking such review).

AEDPA imposes a one-year limitations period for state prisoners seeking federal habeas review. It is codified at 28 U.S.C. § 2244(d) and it provides, in relevant part:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; [or]
>
> - - -
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The vast majority of habeas cases fall within § 2244(d)(1)(A), with AEDPA's limitation period commencing on the date the state prisoner's judgment of sentence became final by the conclusion of direct review. In Petitioner's case, his judgment of sentence became final on December 5, 2004, and therefore AEDPA's limitation period began to run on that date. Swartz, 204 F.3d at 419.

4

On March 31, 2005, Petitioner filed a timely *pro se* motion under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.*, in which he raised issues of double jeopardy and ineffective assistance of counsel for failure to pursue a double jeopardy defense. (CP Dkt. No. 8). None of the claims that Petitioner raises in his Amended Petition For Writ of Habeas Corpus were raised in the PCRA motion. Because that PCRA motion qualifies as a "properly filed application for State post-conviction or other collateral review," AEDPA's limitations period was statutorily tolled on the date it was filed pursuant to § 2244(d)(2). At that point in time, 116 days of the limitations period already had expired (that is, from December 5, 2004 to March 30, 2005 (the day before his PCRA motion was filed)). AEDPA's limitation period would continue to be tolled during the pendency of the PCRA proceeding. See, e.g., Swartz, 204 F.3d at 419-20.

The PCRA Court appointed William Hathaway, Esq., to represent Petitioner and he filed a Supplement To Motion For PCRA Relief. (CP Dkt. No. 10). None of the claims that Petitioner raises in his Amended Petition For Writ of Habeas Corpus were raised in the Supplement.

An evidentiary hearing was held on Petitioner's PCRA claims on August 22, 2005. (See PCRA Hr'g Tr.). Following that hearing, the PCRA Court denied Petitioner's claims on the merits. (See CP Dkt. Nos. 13-14). Petitioner filed an appeal with the Superior Court. On November 9, 2006, it issued a Memorandum in which it affirmed the PCRA Court's decision. (CP Dkt. No. 24, Commonwealth v. Tutt, 92 WDA 2006, slip op. (Pa.Super. Nov. 9, 2006).

The Supreme Court of Pennsylvania denied Petitioner's subsequent petition for allowance of appeal on July 31, 2007, thereby concluding his PCRA proceeding. (CP Dkt. No. 23). Accordingly, the statutory tolling of AEDPA's limitations period pursuant to § 2244(d)(2) ended and the limitations period began to run again the next day, August 1, 2007. See, e.g., Swartz, 204 F.3d at 419-20. Since 116 days of AEDPA's limitation period already had expired prior to the commencement of the PCRA

5

proceeding, Petitioner had 249 days remaining to file a timely federal habeas petition. That meant he had until on or around Monday, April 7, 2008, to do so.

Petitioner did not meet that deadline. He commenced this federal habeas proceeding, at the very earliest, on July 20, 2008, when he signed and dated his original petition for writ of habeas corpus. He filed that petition with the U.S. District Court for the Northern District of Ohio, which subsequently transferred it to this Court. In the original petition, he raised the following claims:

1. "Double jeopardy under 18 Pa.C.S. A. § 111";
2. "Prosecution for receiving stolen property and bank fraud requires same proof of fact in this instance";
3. "The crimes of bank fraud and receiving stolen property are designed to prevent essentially the same evil"; and,
4. "Defense attorney was ineffective for finding no merit in double jeopardy defense."

[ECF No. 1].

This Court ordered that the original petition be served upon Respondents. Thereafter, on March 31, 2009, they filed a motion to dismiss the original petition because it was untimely under AEDPA's statute of limitations. [ECF No. 12].

Next, on April 28, 2009, Petitioner filed a motion to alter or amend his petition [ECF No. 15] in which he explained that on November 5, 2008, he was sentenced to a term of imprisonment for yet another conviction in the U.S. District Court for the Northern District of Ohio at criminal docket number 08-277. He stated that U.S. Probation Officer Velencia Small prepared the presentence investigation report for that case and that "[i]n the course of her investigating, Officer Smalls was told of a video of the actual crime taking place." [ECF No. 15 at ¶ 4]. He claimed that he "did not know that such a video existed. Nowhere in the official record is there any mention of a video of the actual crime taking place." [ECF No.15 at ¶ 5]. He also claimed that he "is not the person in the video" and that if he "had known

6

of its existence, he would not have pled guilty to a crime he is obviously not guilty of[.]"  [ECF No. 15 at ¶¶ 6-7].

On December 21, 2009, this Court issued a Memorandum Order [ECF No. 21], upon the undersigned's Report and Recommendation [ECF No. 19], in which Respondents' Motion to Dismiss was granted on the basis that all claims raised in the original petition were untimely.  Petitioner was permitted to file an amended petition setting forth the claims he wished to raise based upon his allegation that he could produce newly discovered evidence of his innocence.  [See ECF No. 20].

Petitioner has filed the Amended Petition For Writ Of Habeas Corpus [ECF No. 22] and he raises the three claims set forth above (prosecutorial misconduct for failing to disclose the alleged video; ineffective assistance on the part of Attorney Malc Dwyer for having known of the video and failing to utilize it; and, that he is actually innocent).  The Respondents have filed their Answer [ECF No. 25], to which Petitioner has filed a Reply [ECF No. 30].

Respondents explain that no surveillance video exists of the criminal conduct that occurred on October 18, 2001, at Sky Bank Girard.  They further explain that Trooper Barsotti's reference to a videotape (see Affidavit of Probable Cause)[2] most likely is to a recording of criminal conduct that occurred at the Sky Bank branch in Orwell City, Ohio ("Sky Bank Orwell City") in which Petitioner also participated.  That video recording is not in the possession of the Erie County District Attorney's Office and they cannot verify whether such a tape actually exists.  Respondents also note that in Petitioner's case file there are two still images apparently from a video that are attached to the police report, but the report is not clear as to what the still images depict.  [ECF No. 16].

---

[2]  Respondents also explain that in his police report, Trooper Barsotti mentioned a video recording from the Sky Bank Orwell City branch.  [ECF No. 16 at ¶ 12].  That police report does not appear to be contained in the record before this Court.

Petitioner does not dispute that the video recording and/or still images are not of the crime that occurred at the Sky Bank Girard and instead may be of the criminal conduct that occurred at Sky Bank Orwell City. [See ECF Nos. 17, 18, 22, 30]. He now argues that one of the other individuals that participated in his vast bank fraud scheme, Larry Copeland, is the one who cashed the fraudulent check at Sky Bank Girard and that he is entitled to habeas relief because he is actually innocent.[3] [ECF No. 18 at ¶ 7].

### B. Discussion

#### (1) Petitioner's Claims Are Untimely

Respondents contend that all of the claims raised in the Amended Petition must be dismissed because they are untimely under AEDPA's statute of limitations. The Court agrees. As outlined above, Petitioner had until April 7, 2008, to file timely habeas claims pursuant 28 U.S.C. § 2244(d)(1)(A). He did not meet that deadline and for that reason all of the claims raised in the Amended Petition must be denied.

To the extent that Petitioner would argue that his Amended Petition is timely pursuant to § 2244(d)(1)(D), that argument fails. Under § 2244(d)(1)(D), AEDPA's one-year limitations period begins to run on "the date on which the factual predicate of the claim or claims presented could have been discovered *through the exercise of due diligence*." (Emphasis added).

After this Court dismissed as untimely all of the claims Petitioner had raised in the original petition, he was granted permission to file an amended habeas petition because he asserted that in November 2008 he learned for the first time, through his review of Probation Officer Small's

---

[3] Petitioner contends that it must be Copeland's image captured in the video/still images cashing the fraudulent check at Sky Bank Orwell City. He has not submitted evidence to support this allegation. In September 2002, Copeland entered a guilty plea to bank fraud, in violation of 18 U.S.C. § 1344, in the U.S. District Court for the Northern District of Ohio. See ECF Nos. 17, 22 in United States v. Copeland, 02-cr-259 (N.D. Oh.).

8

Presentence Investigation Report, that a surveillance video existed and that it purportedly established his innocence. Petitioner has never submitted Officer Small's Presentence Investigation Report to this Court to support his allegation. He did attach to one of his motions a presentence investigation report from Erie County Adult Probation, *but nowhere in that report is a video referenced*. In that document, the description of Petitioner's Erie County conviction is as follows:

> On 10-18-01, [Petitioner] entered the sky bank branch located in Girard, Pa. He produced an Ohio Driver's license bearing the name "Edward A. Dobran," then cashed a bogus "Holiday Club" check worth $1,983.72. [Petitioner] headed leisurely toward the door to an awaiting automobile. Although bank officials recognized fraudulence, it was already too late. Trooper Barsotti took the check (number 46861, account number 0425128887) and four (4) Styrofoam cups for evidentiary purposes. Testing yielded uncertain results and stymied the case-inquiry. However, police in Orwell City, Ohio detained two (2) roguish suspects a few days later, on 10-22-2001. [Petitioner] road (sic) in a car driven by Martin L. Thomas, and conspicuously left the "Edward A. Dobran" photo-license at another Sky Bank branch. On 2-11-03, authorities discovered a match between the FBI prints and latent fingerprints from the bogus check. This gave the impetus for an arrest warrant.

[ECF No. 15 at p. 4]. This presentence investigation report is additional evidence of Petitioner's guilt. It does not contain any information that assists him in establishing the timeliness of his habeas claims under § 2244(d)(1)(D).

Moreover, Petitioner's allegations are suspect on their face because the affidavit of probable cause that accompanied his arrest warrant expressly referenced a videotape. Therefore, he would have been notified, at the very latest, at his 2004 arraignment that a videotape was being referenced by the police in regards to their investigation. See Pa.R.Crim.P. 540 (copy of arrest warrant and supporting affidavits must be provided to defendant at the preliminary arraignment).

Petitioner also relies upon documents that he obtained in March 2010 from his former counsel in another case, Jon Pushinsky, Esq. At Petitioner's request, Pushinsky reviewed the case file he had for Petitioner and forwarded to him some documents. [ECF No. 33 at p. 3]. Petitioner claims these

9

documents show that Larry Copeland was convicted in the U.S. District Court for the Northern District of Ohio for cashing the Holiday Club check on October 18, 2001, from the Sky Branch Girard location. They do not. But more important for the purposes of the instant analysis, Petitioner has utterly failed to show that he could not have obtained these documents earlier and presented them to both the state court and this Court in a timely fashion.

In conclusion, Petitioner has not demonstrated that he was diligent in trying to discover the information upon which he now relies. Therefore, he cannot utilize § 2244(d)(1)(D) in order to avoid AEDPA's limitations period and the Amended Petition must be denied as untimely.

### (2) Actual Innocence Claim

Although each of Petitioner's claims should be denied as untimely, they may also be denied for other reasons. Petitioner contends that he is actually innocent and that – even though he pleaded guilty to this crime – Larry Copeland is the one who cashed the fraudulent check at Sky Bank Girard on October 18, 2001. While a credible claim of actual innocence can act as a "gateway" through which a habeas petitioner may pass to have an otherwise procedurally barred constitutional claim considered on the merits, see Schlup v. Delo, 513 U.S. 298 (1995) discussed *infra*, a stand-alone claim of actual innocence must be denied because it is not cognizable in federal habeas. Herrera v. Collins, 506 U.S. 390 (1993).

In Herrera, the Supreme Court explained that once a defendant is found guilty after a fair trial in the state court, he no longer is entitled to a presumption of innocence, and thus comes before the federal habeas court not as one who is innocent, but as a convicted criminal. 506 U.S. at 399-400. Because such a determination in the state criminal trial is "a decisive and portentous event" and "[s]ociety's resources have been concentrated at that time and place in order to decide, within the limits of human

10

fallibility, the guilt or innocence of one of its citizens," freestanding claims of actual innocence are not reviewable in federal habeas actions. Id. at 401 (internal quotations and citations omitted). The Court noted that "[t]his rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution–not to correct errors of fact." Id. at 400. "Federal courts are not forums in which to relitigate state trials." Id. at 401 (quotations and citation omitted). Thus, the Court rejected Herrera's claim that, even if the proceedings that resulted in his conviction and sentence were entirely fair and error free, his innocence would make his execution a constitutionally intolerable event.

Based upon the Herrera decision, the U.S. Court of Appeals for the Third Circuit repeatedly has emphasized that in non-capital cases such is this case: "It has long been recognized that '[c]laims of actual innocence based on newly discovered evidence' are never grounds for 'federal habeas relief absent an independent constitutional violation.'" Fielder v. Varner, 379 F.3d 113, 122 (3d Cir. 2004), quoting Herrera, 506 U.S. at 400; Albrecht v. Horn, 485 F.3d 103, 121-22 (3d Cir. 2007). Thus, Petitioner's stand-alone claim of actual innocence is not cognizable under the federal habeas corpus statute.[4]

---

[4] In Herrera, the Supreme Court left open the possibility that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there was no state avenue open to process such a claim." 506 U.S. at 417 (emphasis added). In House v. Bell, 547 U.S. 518 (2006), the Supreme Court once again left open the question of whether a truly persuasive freestanding innocence claim in a capital case would warrant federal habeas relief if no state avenues of relief remain available. Id. Recently, in District Attorney's Office for the Third Judicial District v. Osborne, — U.S. —, 129 S.Ct. 2308 (2009), which was a non-capital case in which a state inmate brought an action under 42 U.S.C. § 1983 to compel the State of Alaska to release biological evidence so that it could be subject to DNA testing, the Supreme Court in dicta assumed without deciding that an actual innocence claim could be brought in habeas, but noted "the high standard any claimant would have to meet" to succeed with such a claim. Id. at 2321, citing House and Herrera. Suffice it to say that if indeed an actual innocence claim could be brought in a non-capital federal habeas case, Petitioner has fallen far short of offering the quality of new evidence of innocence that would entitle him to habeas relief.

11

### (3) Prosecutorial Misconduct and Ineffective Assistance Claims

In his two remaining claims, Petitioner contends that the prosecution committed misconduct for failing to disclose the alleged video, or in the alternative that Attorney Malc Dwyer was ineffective because she knew of the existence of the video and failed to use it in Petitioner's defense.[5] In addition to being untimely, these claims must be denied because, as Respondents properly assert, Petitioner has never raised them, or "exhausted" them, to the state court. 28 U.S.C. § 2254(b)(1)(A); see, e.g., Cristin v. Brennan, 281 F.3d 404, 410 (3d Cir. 2002), quoting Coleman v. Thompson, 501 U.S. 722, 731 (1991) (the "exhaustion" doctrine is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights.'").

Although, generally, a district court should require that a state prisoner return to state court to exhaust those claims that are not exhausted, see Crews v. Horn, 360 F.3d 146 (3d Cir. 2004), the court may "excuse" a petitioner's failure to exhaust as "futile" if it is clear that his claims are now barred from review under state law. Gray v. Netherland, 518 U.S. 152, 161 (1996). Futility is established where "exhaustion is not possible because the state court would refuse on procedural grounds to hear the merits of the claims." Lines v. Larkins, 208 F.3d 153, 164 (3d Cir. 2000). In this case, the Court can confidently predict that if it were to direct Petitioner to return to state court to exhaust his prosecutorial misconduct and related ineffective assistance claims, the state court would reject them as untimely

---

[5] The Supreme Court has strictly limited the circumstances under which a guilty plea may be attacked on collateral review:
> It is well settled that a voluntary and intelligent plea of guilt made by an accused person, who has been advised by competent counsel, may not be collaterally attacked. And even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct appeal. Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal. Indeed, the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas.

Bousley v. United States, 523 U.S. 614, 621 (1998) (internal quotations and citations omitted). This Court assumes that Petitioner is contending that his plea was not "intelligent" because the prosecution had suppressed the alleged exculpatory video (or that his trial attorney had not informed him of it), and that he could not challenge his plea on direct appeal because he had not yet discovered the existence of the alleged video.

and/or waived under the PCRA statute. 42 Pa.C.S. § 9545(b), § 9544(b). Therefore, requiring Petitioner to return to state court in order to "exhaust" his claims would be futile.

When a petitioner cannot exhaust his claims due to "futility," those claims are considered "procedurally defaulted" in federal habeas court. Slutzker v. Johnson, 393 F.3d 373, 380 (3d Cir. 2004); Whitney v. Horn, 280 F.3d 240, 252 (3d Cir. 2002); Lines, 208 F.3d at 166. The procedural default doctrine applies to bar federal habeas review when a state court has declined or would decline "to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." Id. at 380-81 & 381 n.6 (internal quotation and citation omitted).

A federal habeas court may excuse a petitioner who has procedurally defaulted his claims if he has established a "fundamental miscarriage of justice, " meaning that he can present evidence of his "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" Schlup, 513 U.S. at 316. See also House, 547 U.S. at 536-39; Houck v. Stickman, 625 F.3d 88, 93-95 (3d Cir. 2010); Hubbard v. Pinchak, 378 F.3d 333, 339-41 (3d Cir. 2004).[6]

Petitioner asserts the fundamental miscarriage of justice exception applies here. He "faces a very high burden" with respect to his assertion. The Supreme Court has instructed that it only applies "in a 'narrow class of cases,' i.e., in '*extraordinary instances* when a constitutional violation probably has caused the conviction of one innocent of the crime.'" Goldblum v. Klem, 510 F.3d 204, 225 (3d Cir. 2007) (emphasis added), quoting McCleskey v. Zant, 499 U.S. 467, 494 (1991). "To establish the requisite probability, the petitioner must show that it is more likely than not that *no reasonable juror*

---

[6] Another exception to the procedural default doctrine is the "cause and prejudice" exception. Under this exception, the petitioner must demonstrate "cause" for the default by demonstrating that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules, and resulting "prejudice." Coleman, 501 U.S. at 753. Petitioner does not rely on the "cause and prejudice" exception to excuse his procedural default.

13

*would have convicted him in light of the new evidence*." Id., quoting Schlup, 513 U.S. at 327 (emphasis added). Where the petitioner pleaded guilty (as in the instant case), he also must establish his actual innocence not only of the count to which he pleaded guilty, but also the other charges the government excused in the plea bargaining process. Bousley, 523 U.S. at 623-24.[7]

The Third Circuit Court has set forth a two-step inquiry a district court must take in evaluating a claim of fundamental miscarriage of justice. First, the court must decide whether the petitioner "has presented new reliable evidence ... not presented at trial[.]" Hubbard, 378 F.3d at 340, citing Schlup, 513 U.S. at 324. With respect to this inquiry, the court must follow the Supreme Court's advisement that:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires a petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

Schlup, 513 U.S. at 324. See also Houck, 625 F.3d at 93-94. Second, only if a petitioner first puts forth new evidence does a court ask "whether it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Hubbard, 378 F.3d at 340. The Supreme Court has emphasized that:

> [t]he meaning of actual innocence ... does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty. It is not the district court's independent judgment as to

---

[7] As Justice Scalia explained in his dissent in Bousley, the plea scenario presents problems for the habeas court in undertaking the actual innocence/miscarriage of justice inquiry. 523 U.S. at 631 (Scalia, J., dissenting) ("But how is the court to determine 'actual innocence' upon our remand in the present case, where conviction was based upon an admission of guilt?"). In response to Justice Scalia's concerns, the majority instructed that a habeas court may consider the factual proffer presented at the change of plea hearing as well as "any admissible evidence of [the] petitioner's guilt." Id. at 624 n. 3. It further held that, in a plea scenario, the petitioner must demonstrate actual innocence not only as to the offense(s) of conviction, but also as to the charges that were dismissed or dropped in the course of plea bargaining. Id. at 624 ("In cases where the government has foregone more serious charges in the course of plea bargaining, [the] petitioner's showing of actual innocence must also extend to those charges.").

14

whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.

Goldblum, 510 F.3d at 226, quoting Schlup, 513 U.S. at 329.

Here, Petitioner has failed to satisfy his burden of presenting "reliable new evidence" to support his claim of actual innocence. There is no evidence of an exculpatory surveillance video of the criminal conduct that occurred at the Sky Bank Girard on October 18, 2001. And the record establishes that his fingerprints were on the fraudulent check cashed there. This case simply does not fall within the rare class of cases in which the fundamental miscarriage of justice exception applies.

Moreover, even if the Court were to assume for the sake of argument that, as Petitioner contends, one of his co-conspirators, Larry Copeland, participated in the criminal conduct against Sky Bank Girard, Petitioner's argument would still fail. He cannot demonstrate that no reasonable juror would have found him guilty of the crime of Theft by Receiving Stolen Property under a theory of accomplice liability, 18 Pa.C.S. § 306, and perhaps even under the theory of joint or constructive possession of the stolen property. See Commonwealth v. Brady, 560 A.2d 802, 806 (Pa.Super. 1989). And, because Copeland was an accomplice of his, he cannot demonstrate that no reasonable juror would have found him guilty of the two counts that the Commonwealth excused in the plea bargaining process: Criminal Conspiracy (Bad Checks) and Criminal Conspiracy (Theft by Deception).

Based upon all of the foregoing, Petitioner's prosecutorial misconduct and ineffective assistance claims should be denied because they are procedurally defaulted.

### C. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. Applying those standards here, jurists of reason would not find it debatable whether each of Petitioner's claims should be denied. Accordingly, a certificate of appealability should be denied.

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Amended Petition For Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, Petitioner is allowed to file objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to file timely

16

objections may constitute a waiver of any appellate rights.  See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

>                                       /s/ Susan Paradise Baxter
>                                       SUSAN PARADISE BAXTER
>                                       United States Magistrate Judge

Dated:  February 25, 2011
cc:     The Honorable Sean J. McLaughlin
        United States District Judge